IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **JOWELL C. BULLARD,** § | |
| **NORRIS RAY TOLLERSON, JR.,** § | |
| **RANDY STOKES, JR., DONNA DAVIS,** § | |
| **ROBERT F. DEXTER, JR.,** § | |
| **JOSHUA R. LUSTER,** § | |
| **SCOTT RUSK, JEFFORY E. POOL,** § | |
| **TYE A. WARD, JAMES DAVID SMITH,** § | |
| **MICHAEL A. KING, DOMINGO MARQUEZ,** § | |
| **STEPHEN A. WILSON, H. WAYNE BLACK,** § | |
| **CHARLES DOUGLAS WALKER,** § | |
| **GARY D. PHENIX,** § | |
| **SCOTT BEECHER HERRING, PAM J. HITT,** § | |
| **SAMUEL RAY GIBSON,** § | |
| **JOHNNIE R. WHITAKER,** § | |
| **EUFEMIO JOE RUBALCABA,** § | |
| **CHRISTOPHER L. SCHWARZ,** § | |
| **STACY L. GRANT,** § | |
| **HERBERT CHARLES CARR,** § | |
| **CHRIS JENKINS, TODD FINLEY,** § | |
| **KEVIN WAYNE OSBORNE,** § **CASE NO.   2-07-CV-049-J** |
| **M. L. WITHERSPOON,** § | |
| **ALVIN VIRGIL NEWTON,** § | |
| **RODERICK J. UPTON, KEVIN LANKFORD,** § | |
| on their own behalf and for all others similarly § | |
| situated, § | |
| § | |
|      **Plaintiffs,** § | |
| § | |
| **v.** § | |
| § | |
| **BWXT PANTEX, L.L.C.,** § | |
| § | |
|      **Defendants.** § | |

**Plaintiffs' Response to Defendant's Response and Objections to Plaintiffs' Motion
<u>for Attorney Fees and Costs</u>**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

**COMES NOW** your prevailing Plaintiffs in the above-entitled and numbered cause and make this Response to Defendants' Response and Objections to Plaintiffs' Motion for Attorney Fees and Costs and would respectfully show this Honorable Court the following:

## I. Introduction

This case initially involved a litany of different Plaintiffs of which seven (7) out of the original thirty (30) prevailed on their claims. Defendant has filed a one hundred and eighty eight (188) response to the Plaintiffs' Motion for Attorneys' Fees and Costs of which the majority is without merit and quite frankly ridiculous and merely increasing their own attorneys' fees and expenses. Your prevailing Plaintiffs would invite the Court at the onset to require Defendant's counsel to produce their time, billing and expense records to this Honorable Court for a determination as to the reasonableness of same with regard to the parties' time, toil and effort in this matter. Defendant's counsel and caused the prevailing counsels' attorneys to incur even more time and expense in responding to this bogus motion. (Reasonable minds would inquire as to the time and expense of filing a 188 page response to objecting to Plaintiffs' attorneys' fees and expenses). Plaintiffs' attorneys have no objections to time accidently claimed for unsuccessful Plaintiffs and Plaintiffs' attorneys specifically object that reasonable rates for time for Michael A. Warner at $200.00 per hour and Jason C. Webster at $175.00 are reasonable. In addition, Plaintiffs' attorneys have created a "common fund" for which other non-participating Plaintiffs have benefited as a result of Plaintiffs' attorneys time, toil and efforts and therefore, Plaintiffs' attorneys should be compensated as a result.

## II. Argument & Authorities

"In the absence of a statutory prohibition, the federal courts have authority to award attorneys' fees from a fund to a party who, having a common interest with other persons,

maintains a suit for the common benefit and at his own expense, resulting in the creation or preservation of a fund, in which all those having the common interest share." Annotation, 8 L.Ed.2d 894, 905 (1963). This exception to the American rule does not shift the cost of attorneys' fees to the losing party, but rather to those who benefit from the suit. The doctrine was originally conceived in *Trustees v. Greenough*, 105 U.S. 527 (1881), a case against trustees of ten or eleven million acres of land who had collusively sold hundreds of thousands of those acres at nominal prices. One beneficiary, after eleven years of litigation at his own expense, recaptured the assets and presented a claim for reimbursement of attorneys' fees. The Supreme Court approved the award, writing that "if the complainant is not a trustee, he has at least acted the part of a trustee in relation to the common interest."*Id.* at 532.

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), was a successful class action in which over $3 million in damages were awarded. Some class members collected their shares of the damages, but others did not. The district court, invoking the common benefit doctrine, ordered that the plaintiffs' attorneys be awarded their fees from the total amount of the judgment, concluding that it was equitable for all class members — claiming and non-claiming alike — to bear a *pro rata* share of the costs of producing the judgment in their favor. The defendant objected to use of the unclaimed money for this purpose, arguing that the ultimate disposition of the unclaimed money had not been decided. But the Supreme Court affirmed the award of attorneys' fees, holding:

> The common-fund doctrine, as applied in this case, is entirely consistent with the American rule against taxing the losing party with the victor's attorney's fees.... Boeing presently has no interest in any part of the fund. Any right that Boeing may establish to the return of the money eventually claimed is contingent on the failure of the absentee class members to exercise their present rights of possession. Although Boeing itself cannot be obliged to pay fees awarded to the class lawyers, its latent claim against unclaimed money in the judgment fund may not defeat each class member's equitable obligation to share the expenses of litigation.

**Plaintiffs' Response to Defendant's Response and Objections to Plaintiffs' Motion for Attorney Fees and Costs – Page 3**

*Id.* at 481-482.

Most federal fee-shifting provisions authorize courts to award fees if "the fee claimant was the 'prevailing party,' the 'substantially prevailing party,' or 'successful.'" *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684 (1983). Although most of these statutes on their face do not distinguish between prevailing plaintiffs and prevailing defendants, the Supreme Court has held that Congress intended that under the civil rights statutes a dual standard should be applied in determining the appropriateness of fee awards to prevailing plaintiffs and prevailing defendants.

In *Hewitt v. Helms*, 482 U.S. 755, 760 (1987), the Supreme Court noted that a plaintiff must "receive at least some relief on the merits of his claim before he can be said to prevail." Thus, it held in that case that, under 42 U.S.C. § 1988(b), a plaintiff was not entitled to a fee award where "[t]he most that he obtained was an interlocutory ruling [by a court of appeals] that his complaint should not have been dismissed for failure to state a constitutional claim." The court of appeals had "explicitly left it to the District Court 'to determine the appropriateness and availability of the requested relief'... ; the Court of Appeals granted no relief of its own, declaratory or otherwise." *Id.* A "prevailing party," however, is not limited to a victor only after entry of a final judgment following a full trial on the merits. "The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees." *Maher v. Gagne*, 448 U.S. 122, 129 (1980). Permitting fee awards upon favorable settlements encourages prevailing parties to settle, thereby lessening docket congestion, and it prevents losing parties from escaping liability for fees merely by conceding cases before final judgment.

The simplest means of providing for an award is through a stipulation in the settlement that a particular party has prevailed and that a specified amount constitutes reasonable attorneys' fees. It has been held that, in settled cases in which courts are called upon to determine

entitlement to attorneys' fees, judges should engage in "a close scrutiny of the totality of circumstances surrounding the settlement, focusing particularly on the necessity for bringing the action and whether the party is the successful party with respect to the central issue." Use of this standard will prevent fee awards in "nuisance settlements."

In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, the Supreme Court held that a party is not a "prevailing party" under federal fee-shifting statutes if it "has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."[33] Prior to this decision, most federal courts of appeals had recognized the "catalyst theory" and awarded fees in such circumstances. In cases that are litigated to conclusion, a party may be deemed to have prevailed for purposes of a fee award prior to the losing party's having exhausted its final appeal. However, a party that prevails at the trial level will ultimately be entitled to a fee award only if it finally prevails on appeal.

In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court noted that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." However, if the plaintiffs achieve only *some* of the benefit, then they will not necessarily be entitled to a full award of attorneys' fees. The Court addressed the issue of whether, under 42 U.S.C. § 1988(b), "a partially prevailing plaintiff may recover an attorney's fee for legal services on unsuccessful claims." *Id.* at 426. The Court held:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects
> from his successful claims, the hours spent on the unsuccessful claim should be
> excluded in considering the amount of a reasonable fee. Where a lawsuit
> consists of related claims, a plaintiff who has won substantial relief should not
> have his attorney's fee reduced simply because the district court did not adopt
> each contention raised. But where the plaintiff achieved only limited success,
> the district court should award only that amount of fees that is reasonable in

relation to the results obtained. *Id*. at 440.

As for how to determine the amount of fees that is reasonable when the plaintiff achieves only limited success, the Court wrote:

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.
> *Id*. at 436-437.

The Fair Labor Standards Act, among other things, prohibits employers from discriminating on the basis of sex in the amount of wages paid employees for equal work, and it prohibits labor organizations from causing employers to so discriminate. 29 U.S.C. § 206(d). Section 216(b) of Title 29 provides that in actions to enforce such provision, the court:

> shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

The amount of attorneys' fees to be awarded pursuant to a statutory or common law exception to the American rule "should, as a general rule, be fixed in the first instance by the District Court, after hearing evidence as to the extent and nature of the services rendered." *Perkins v. Standard Oil of California*, 399 U.S. 222, 223 (1970).

The evidence presented to the district court must be relatively specific:

> It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainment of each attorney. But without some fairly definite information as to the hours devoted to various general activities, *e.g.*, pretrial discovery, settlement negotiations, and
> the hours spent by various classes of attorneys, *e.g.*, senior partners, junior partners, associates, the court cannot know the nature of the services for which compensation is sought. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3rd Cir. 1973).

In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware*

*Valley I)*, 478 U.S. 546, 562-566 (1986), the Supreme Court explained "the proper measure for determining the 'reasonableness' of a particular fee award":

> One method, first employed by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (1974), involved consideration of 12 factors. *Johnson* was widely followed by other courts, and was cited with approval by both the House and the Senate when [42 U.S.C.] § 1988 was enacted.... Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results. For this reason, the Third Circuit developed another method of calculating "reasonable" attorney's fees. This method, known as the "lodestar" approach, involved two steps. First, the court was to calculate the "lodestar," determined by multiplying the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F. 2d 161, 167 (CA3 1973) (*Lindy I*). Second, using the lodestar figure as a starting point, the court could then make adjustments to this figure, in light of "(1) the contingent nature of the case, reflecting the likelihood that hours were invested and expenses incurred without assurance of compensation; and (2) the quality of the work performed as evidenced by the work observed, the complexity of the issues and the recovery obtained." ...
>
> We first addressed the question of the proper manner in which to determine a "reasonable" attorney's fee in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). We there adopted a hybrid approach that shared elements of both the *Johnson* and the lodestar method of calculation.
>
> "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate...." To this extent, the method endorsed in *Hensley* follows the Third Circuit's description of the first step of the lodestar approach. Moreover, we went on to state: "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward. . . . We then took a more expansive view of what those "other considerations" might be, however, noting that "[t]he district court also may consider [the] factors identified in *Johnson v.*

*Georgia Highway Express, Inc.*, 488 F. 2d 714, 717-719 (CA5 1974), though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.*, at 434, n. 9 (citation omitted).

We further refined our views in *Blum v. Stenson*, 465 U.S. 886 (1984).... *Blum* also limited the factors which a district court may consider in determining whether to make adjustments to the lodestar amount. Expanding on our earlier finding in *Hensley* that many of the *Johnson* factors "are subsumed within the initial calculation" of the lodestar, we specifically held in *Blum* that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount and thus cannot serve as independent bases for increasing the basic fee award. 465 U.S., at 898-900. Although upward adjustments of the lodestar figure are still permissible, *id.*, at 901, such modifications are proper only in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the lower courts.

In short, the lodestar figure includes most, if not all of the relevant factors comprising a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.

In *Delaware Valley I*, the Court indicated that to be entitled to an upward adjustment, a prevailing party must show that it would have been unable "to obtain counsel without any promise of reward for extraordinary performance." It must present "specific evidence as to what made the results it obtained ... so 'outstanding.'" It must show "that the lodestar figure . . . was far below awards made in similar cases where the court found equally superior quality of performance." Finally, to adjust a fee upward, a court must make "detailed findings as to why the lodestar amount was unreasonable, and in particular as to why the quality of representation was not reflected in the number of hours times the reasonable hourly rate." 478 U.S. at 567-568. The Court left open "the question of upward adjustment ... based on the likelihood of success, or to

put it another way, the risk of loss." *Id*. at 568. By "risk of loss" the Court apparently meant an attorney's risk of losing and not being paid at all because he had agreed to represent his client on a contingency basis, being paid out of the winnings or not at all.

The Court answered this question in a second opinion in the same case. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley II)*, 483 U.S. 711 (1987), which was a 4-1-4 decision. Justice O'Connor concurred in parts of each plurality, which makes her opinion pivotal in determining what a majority of the Court decided in the case. Five justices (Justice O'Connor and the four who joined Justice Blackmun's dissent) decided that upward adjustments generally are appropriate in contingency fee cases. However, five justices (Justice O'Connor and the four who joined Justice White's plurality), decided that, even if "typical fee-shifting statutes are construed to permit supplementing the lodestar in appropriate cases by paying counsel for assuming the risk of nonpayment ... it was error to do so in this case." 483 U.S. at 728.

The prevailing Plaintiffs and their attorneys do agree that costs awarded to under the FLSA may include reasonable out-of –pocket expenditures. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002); *Herold v. Hajoca Corp.,* 864 F.2d 317, 323 (4th Cir. 1988).

### A.  Expert Witness Fees of Jeff M. Compton

Plaintiffs were required to hire an expert witness, Jeff M. Compton, in an attempt to discern the manner and method in which each Plaintiff was paid. Defendants were unable even in trial to determine the method of payment or even how Plaintiffs were paid based on the documents produced by Defendant during discovery. Mr. Compton, after reviewing the documents produced by Defendant, was unable to make any sense of those documents after

extensive review, yet Plaintiffs were required to attempt to find out now Defendant computed Plaintiffs' overtime which was furnished to Plaintiffs in a nonsensical computer generated mess that even Defendant's payroll witnesses at trial was unable to comprehend or decipher.

### B.  Expenses from Different Litigation

Plaintiffs have no objection to the reduction of $427.84 for the depositions in Cause No. 02-08CV-011-J in the amount of $427.84. Defendant's counsel made no effort to contact Plaintiffs' counsel to make a reasonable inquiry about a mistake in billing.

Defendant's complain about the LexisNexis Research during trial "provided by John W. Warner in the amount of $2,301.35). Plaintiff's counsel, Michael A. Warner, shares a LexisNexis account with his father, John W. Warner and the charges were incurred during the trial, but as usual business practices require were not billed until after trial. These expenses were directly related to the case at bar. (See Affidavit of Michael A. Warner and Jason C. Webster). Defendants' counsel made absolutely no effort to ascertain the amount or nature of the research, instead relying on the premise that they could bill Pantex (and get paid) for raising a bogus objection to a reasonable trial expense. John W. Warner did not perform any research in this case, but was unfortunate enough to be the attorney to whom the bill was sent.

### C.  Costs for Defending

With regard to the deposition of Richard Fry, Fry was the personnel representative that was unable to tell the Court during trial or in his deposition how the Plaintiffs were paid. It was as a direct and proximate result that Plaintiffs were required to hire an expert to try to determine how Plaintiffs were paid since no one at Pantex seems to know.

### D. Costs for Meetings and Discussions

Spare me. If you feel like deducting $351.86 then so be it. Defendants should be charged for the entire cost of mediation. When they showed up for "mediation" they offered absolutely nothing and the $5,000.00 mediation fee was a total waste of time.

### E. Subpoenas for Witnesses Who Did Not Testify

Again, spare me. Take that off if the Court deems necessary. These witnesses were contacted as rebuttal witnesses based on the premise that Pantex managerial employees (specifically, "The Breakfast Club" would get a little careless with the truth). Although this happened, it was not imperative that these witnesses testify as the court had heard enough by the time these witnesses would have been called. Defendants identified these witnesses are persons with knowledge of relevant facts without discerning what specific information these managerial employees had.

### F. Extraordinary Bills for4 Meals at Various Restaurants and Bars

Defendants alleged in their 188 Response that "the most expensive meal at most Amarillo restaurants and bars listed below costs less than $20.00." There is absolutely no evidence or documentation that Defendant's assumption or "restaurant investigation" is valid and nothing more than an attempt for Defendant's attorney's to bill Pantex for another page and/or paragraph at their "reasonable rate."

### G. Rental Car Bills

Defendants complain about Mr. Webster's rental car expense. Neither Mr. Howard, nor Mr. Vardabedian and/or their extensive staff ever offered to drive Mr. Webster anywhere. Had that offer been made, Mr. Webster may not have had to have a rental car during trial. Neither offered to allow Mr. Webster to stay at their house either. This offer would have saved Mr.

Webster rental car and meal expense and Pantex thousands of dollars in attorneys' fees for generating a 188 page document objecting to time and expenses for Plaintiffs.

### H.  Travel Time

Travel time is compensable and is a reasonable expense. Michael A. Warner had to travel to Houston two different times to prepare for trial. Defendants produced over 15,000 pages of documents in this case.

### I.  Conclusion

Plaintiffs have adequately set forth their time and expenses in this case and Defendants have attempted in their 188 Response to do nothing more than muddle the Court's attention to the matters at hand which are calculating Plaintiffs' attorneys' fees, costs and expenses.

DAVID P. MATTHEWS
Texas Bar No. 13206200
JASON C. WEBSTER
Texas Bar No. 24033318
MATTHEWS & ASSOCIATES
2905 Sackett
Houston, TX 77098
(713) 222-8080 Telephone
(713) 535-7184 Fax

s/ Michael A. Warner
MICHAEL A. WARNER
Texas Bar No. 20872700
THE WARNER LAW FIRM
101 S.E. 11th, Suite 301
Amarillo, TX  79101
(806) 372-2595 Telephone
(806) 372-5674 Fax

**COUNSEL FOR PLAINTIFFS**

# CERTIFICATE OF SERVICE

I, Michael A. Warner, one of the attorneys for Plaintiffs, do hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system which sent notification of such filing to the following counsel:

Bradley W. Howard
Robert C. Vartabedian
BROWN & FORTUNATO, P.C.
PO Box 9418
Amarillo, TX  79105-9418
Telephone:    (806) 345-6300
Facsimile:     (806) 345-6363
bhoward@bf-law.com
nhuelster@bf-law.com
swarwick@bf-law.com
***Counsel for Defendant BWXT Pantex, L.L.C.***

I further certify that I have caused a true and correct copy of the foregoing to be forwarded via United States mail, postage prepaid, to any of the above who were not served via ECF notification.

DATED:  October 8, 2009

                                           s/ *Michael A. Warner*
                                           MICHAEL A. WARNER