IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOWELL C. BULLARD, ET AL. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2-07CV-049-J |
| | § | |
| BABCOCK & WILCOX TECHNICAL | § | |
| SERVICES PANTEX, LLC, | § | |
| | § | |
| Defendant. | § | |

## SURREPLY BRIEF TO PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW BABCOCK & WILCOX TECHNICAL SERVICES PANTEX, LLC ("Defendant"), and files this Surreply Brief to Plaintiffs' Reply to Defendant's Response ("Surreply Brief"), and would show the Court as follows:

### INTRODUCTION AND BACKGROUND

Plaintiffs filed a Motion for Fees and Expenses in this case which included requests for $41,936.34 in expenses, $495,771.75 in attorney fees, and a one-third upward adjustment of the lodestar in the amount of $163,604.68. Defendant filed a Response to the Motion for Fees and Expenses on September 24, 2009 ("Response"), and Plaintiffs filed a reply brief ("Reply") on October 8, 2009. The Court granted Defendant's Motion for Leave to File a Surreply on November 10, 2009. Accordingly, Defendant files this Surreply Brief in order to respond to arguments raised in Plaintiffs' Reply.

### ARGUMENT AND AUTHORITIES

In their Reply (incorrectly titled a Response to a Response), Plaintiffs raise several new arguments that necessitate this response. First, Plaintiffs ask the Court to review the billing

practices of Defendant's attorneys to make a determination of their reasonableness. Second, Plaintiffs urge the Court to follow an overruled concurring opinion from 1987 and upwardly adjust the lodestar because Plaintiffs' attorneys were hired on a contingent fee basis. Third, Plaintiffs' counsel request reimbursement for an additional twenty (20) hours they claim was spent researching and drafting their Reply. Finally, in their effort to seek reimbursement of their fees at unreasonably high rates, Plaintiffs offer the affidavits of Philip R. Russ, Mike Warner, and Jason Webster to assert that plaintiffs' attorneys have substantially higher hourly rates than comparable defense attorneys with fee-paying clients.

### 1. The Court Should Not Require Defendant To Produce Its Billing Records

In Plaintiffs' Reply, they "invite the Court at the onset to require Defendant's counsel to produce their time, billing and expense records to this Honorable Court for a determination as to the reasonableness of the same with regard to the parties' time, toil and effort in this matter." Reply, p. 2. Plaintiffs do not submit a discovery request and do not provide the Court with any appropriate reason why the production of the Defendant's billing records might be reasonably calculated to lead to the discovery of admissible evidence. Rather, the Plaintiffs appear to be asking the Court, on its own initiative, to require production of Defendant's bills, analyze the Defendant's counsel's billing records, and then determine if the Defendant's bills are reasonable. It is not clear whether the Plaintiffs are suggesting that the Court review all of Defendant's billing records or just the billing records related to Plaintiffs' Motion for Fees and Expenses.

Although the Plaintiffs prevailed on only a small fraction of their claims and provided almost no documentation of work expended on those few successful claims, Plaintiffs seek about $700,000 in fees and expenses. Plaintiffs' Motion for Fees and Expenses required a great deal of objections because it is replete with problems, including a lack of documentation for Plaintiffs'

often extraordinary expenses, incredibly vague time entries—many of which were created a year after the fact, claims for hundreds of hours in fees incurred on unsuccessful claims, claims for fees incurred in entirely different litigation, and requests for astoundingly high hourly rates.

Even assuming, *arguendo*, that the Plaintiffs actually made a request that the Defendant produce some or all of its billing (Defendant has never received any Request for Production asking for billing information), such a request should be denied. Plaintiffs have presented no legal authorities that would support such a request. The billing practices or rates of opposing counsel are immaterial, because opposing counsel's billing practices are not among the factors to be considered by this Court in determining the appropriate amount of fees that Plaintiffs should recover. *Duininck Bros. Inc. v. Howe Precast, Inc.*, 2008 WL 4411641, *2 (E.D. Tex., Sept. 23, 2008).

Courts confronted with requests to view opposing counsel's billing information have repeatedly denied them. *See, e.g., Duininck Bros. Inc.*, 2008 WL 4411641 at *2-3 ("The thrust of this lawsuit is whether [the plaintiff's] fees, not those generated by [the defendant], fall within the range of reason. Because [the defendant's] attorney fees records are not probative as to that range, they are irrelevant and, thus, not discoverable."); *Clawson v. Mountain Coal Co.*, 2007 WL 2175154, *1-2 (D. Colo., July 26, 2007) (denying the plaintiff's motion for limited discovery into defendant's attorney's fees because the billing records sought were not "sufficiently relevant to allow discovery at this late date"); *Canlas v. Eskanos & Adler, P.C.*, 2006 WL 3227873, *1-2 (N.D. Cal., Nov. 7, 2006) (denying the plaintiff's motion to compel production of the defendant's billing records); *MCI Telecommc'ns Corp v. Crowley*, 899 S.W.2d 399 (Tex.App.—Fort Worth 1995, orig. proceeding) (holding that opposing counsel's billing records are irrelevant if the opposing side is not seeking reimbursement of its own legal

expenses). Similarly, numerous courts have held that a comparison between plaintiff counsel's and defense counsel's billing records is not determinative and is not advisable. *See Rabo Agrifinance, Inc. v. Veigel Farm Partners*, 2008 WL 3992060, *6 (N.D. Tex.—Amarillo Div., August 20, 2008) *aff'd by* 328 Fed.Appx. 942, 2009 WL 1362826 (5th Cir. 2009) (holding that no adjustment in a fee award was appropriate, even though the defendant's fees totaled less than $60,000.00, compared to the $139,389.00 expended by the plaintiff); *Brantley v. Surles*, 804 F.2d 321, 327 (5th Cir. 1986) (holding that a difference in the amounts billed by opposing counsel is not determinative); *see also, Burks v. Siemens Energy & Automation, Inc.*, 215 F.3d 880, 884 (8th Cir. 2000) (holding that a comparison between the billing records of plaintiff's counsel and defendant's counsel is an "apples-to-oranges comparison" that is not required by law and is not advisable); *Gay v. Saline Co.*, 2006 WL 3392443, *3 (E.D. Ark., Oct. 20, 2006) (holding that the a comparison of opposing counsels' fees is not necessary or advisable).

In this case, to name just a few of the things that make a comparison of Plaintiffs' fees to Defendant's fees fruitless, (1) Defendant bore the burden of proof on the key issue in the case (the exempt status of each Plaintiff), (2) the vast majority of trial exhibits were presented by Defendant, (3) Defendant submitted numerous trial briefs to the Court while Plaintiffs submitted none, (4) Defendant took thirty-one depositions, whereas Plaintiff took four, (5) Defendant expended significant hours preparing to defend claims that were abandoned by Plaintiffs such as Plaintiffs' attempts to certify a collective action, assert claims for potential plaintiffs who were never joined to the suit, and bring meritless claims for retaliation, (6) Defendant drafted the vast majority of the Joint Pretrial Order (the short "Plaintiffs' Claims" section was drafted by the Plaintiffs but contained so many errors that the Joint Pretrial Order had to be amended and re-submitted), (7) Defendant calculated the pay for all Plaintiffs including alleged damages and

annual compensation, (8) Defendant drafted all of the parties' trial stipulations, and (9) Defendant prevailed as to approximately 85% of the claims for damages and received a complete defense verdict as to the claims of twenty-three of thirty Plaintiffs. Therefore, it would not be surprising nor probative if Defendant's counsel expended significantly more time than Plaintiffs' counsel on this litigation. There is no question raised in this litigation than would be answered by analyzing Defendant's bills and comparing them to Plaintiffs' bills.

Additionally, the Defendant's bills contain hundreds of entries with attorney-client privileged information. Further, if discovery is reopened, then Defendant will request permission from the Court to conduct additional discovery into Plaintiffs' claims for fees. The only result of complying with Plaintiffs' suggestion would be to needlessly allow expansive discovery at a late date, essentially creating the kind of "second major litigation" over attorney's fees that has been discouraged by the Supreme Court. *See Hensly v. Eckerhart*, 461 U.S. 424, 437 (1983).

Since it is entirely unclear why Plaintiffs want the Court to compel information about the Defendant's billing practices, one possibility is that the Plaintiffs think this information might be useful for the Court to determine reasonable rates. In response to a similarly vague request in *Duininck Bros. Inc.*, the court reasoned that "one might construe the Plaintiffs' argument to be that the Defendants' attorney fee records would have a bearing on the 'fee customarily charged in the locality for similar services.'" 2008 WL 4411641 at *3 (*citing Land Rover U.K., Ltd. v. Hinojosa*, 210 S.W.3d 604, 607 (Tex. 2006)). The court determined that there was no reason to compel the defendants' counsel to disclose their billing rates because such information was not necessary to determine a customary fee. *Duininck Bros. Inc.*, 2008 WL 4411641 at *3. If this Court disagrees, however, and finds that the rates charged by Defendant's counsel would be helpful in ascertaining a reasonable fee for Mr. Warner and Mr. Webster, Defendant would

gladly provide this information to the Court as further evidence that the hourly rates claimed by

Plaintiffs are unreasonable. However, Defendant believes that the Court has ample evidence to

determine the appropriate rates for Mr. Warner and Mr. Webster based upon (1) Mr. Warner's

own affidavit from 2003 claiming a $150 hourly rate in an FLSA case, (2) affidavits from Mr.

Bustos[1] and Mr. Howard explaining that $175-$200 per hour for Mr. Webster and Mr. Warner

would be an appropriate and customary legal fee in line with rates in the Amarillo area, and (3)

the Court's own knowledge of the customary legal fees charged in the Amarillo area and the

Court's own observations regarding the skill, experience, and reputation of Plaintiffs' counsel.

### 2.  Plaintiffs' Request For An Upward Adjustment Of The Lodestar Should Be Denied

Plaintiffs request a $163,600 upward adjustment of the lodestar amount. As the lone basis

for this adjustment, the Reply cites language in a concurring opinion written by Justice

O'Connor about fees awarded in contingent cases. This claim is contained on page 9 of

Plaintiffs' Reply and follows eight very unusual pages of argument. The arguments on pages 2

through 9 of Plaintiffs' Reply are very well-written, yet largely inapplicable to the issues

currently before the Court. After briefly researching the issue, Defendant discovered that pages

2 through 9 of Plaintiffs' Reply were taken verbatim, without attribution, from a book about

attorney's fees. *See* excerpts of <u>Awards of Attorneys Fees by Federal Courts, Federal Agencies</u>

<u>and Selected Foreign Findings</u>, by Mary V. Capisio, attached as **Exhibit A**. The underlined

portions of **Ex. A** were used verbatim in Plaintiffs' Reply. However, Plaintiffs omitted the

language in the book that directly follows which states: "Subsequently, however, in *Burlington v.*

*Dague*, 505 U.S. 557, 567 (1992), the Court, 'adopting the position set forth in Justice White's

---

[1] Mr. Warner's claims in Paragraph 9 of his affidavit that Fernando Bustos is "an insurance defense attorney" and that Mr. Bustos is "not 'disinterested' as the term is used in his deposition[sic]" are untrue and baseless as can be readily ascertained from Mr. Bustos' original affidavit. *See* Defendant's Response, Exhibit EE (App.187).

opinion in *Delaware Valley II* held 'that enhancement for contingency is not permitted under the fee-shifting statutes at issue.'" **Ex. A** at p. 55. Accordingly, Plaintiffs' Reply requests that this Court make a $163,600 upward adjustment based on an opinion that has been overruled. The Supreme Court explicitly rejected O'Connor's concurrence and held that upward adjustments based on contingent fee arrangements are not appropriate. *See Dague*, 505 U.S. at 567.

### 3. Plaintiffs' Request For Reimbursement Of Twenty Hours Of Time Spent In Preparing Plaintiffs' Reply Brief Is Excessive

In Paragraph 10 of his affidavit, Mr. Warner states that "Plaintiffs' counsel now seeks an additional 20 hours for research and responding to this voluminous Response." Plaintiffs failed to produce any documentation of this time so it is not recoverable. Defendant agrees that it could be reasonable for an attorney to spend 20 hours or more on a reply to a brief that raises as many objections as Defendant's Response. However, it is not reasonable to believe that the Plaintiffs' counsel spent 20 hours researching and drafting the particular brief they submitted to this Court. Plaintiffs' Reply consists of three affidavits, a brief introduction (on page 2), and two and one-half pages of various arguments (on pages 9-12). These arguments do not contain any citations to authority, are written in a very casual manner, and are littered with unusual ad hominems (*see e.g.*, "Spare me. If you [presumably referring to Judge Robinson] feel like deducting $351.86 then so be it... Again, spare me." Reply, p. 11; *see also*, "Neither [Mr. Howard nor Mr. Vartabedian] offered to allow Mr. Webster to stay at their house either. This offer would have saved Mr. Webster rental car and meal expense and Pantex thousands of dollars in attorneys' fees for generating a 188 page document objecting to time and expenses for Plaintiffs." Reply, p. 11-12). The remaining eight pages of the motion are taken verbatim from a book and would have therefore required very little writing or research time. Pages 2-9 of the Reply are taken almost entirely from **Ex. A**, <u>Awards of Attorneys Fees by Federal Courts, Federal Agencies and</u>

Selected Foreign Findings. The portions of pages 2-9 that were not taken from **Ex. A** were taken from a CRS Report for Congress, attached as **Exhibit B**. The underlined portions of **Ex. B** were used verbatim in Plaintiffs' Reply. The fact that Plaintiffs' counsel submitted a Reply brief composed almost entirely of inapplicable book excerpts and then claimed to the Court they spent 20 hours on "research and responding" indicates a troubling pattern of overstating hours worked which is central to this attorney's fees dispute.

**4.  Plaintiffs' Request For Attorney's Fees At Extremely High Rates Should Be Denied**

Mr. Warner's new affidavit claims that "$500 per hour is my normal and customary charge for trial time for criminal and civil litigation and has been for more than five (5) years." Reply, Exhibit B, ¶ 2. In other words, Mr. Warner claims that he has consistently charged fee-paying clients $500 per hour since at least 2004. An obviously untrue statement such as this one should not be submitted to the Court in a sworn affidavit. Mr. Warner's own affidavit, submitted to this Court in 2003, stated that his hourly rate was a reasonable $150 per hour. *See* Ex. Z (App. 149) in Defendant's Response. It is absurd for him to claim that his hourly rate increased 333% from 2003 to 2004. As the Court may judicially notice, a $500 hourly rate is simply unheard of in Amarillo. The Court as well as anyone practicing law in Amarillo would know that there is not any litigator in Amarillo who consistently charges rates even approaching $500 per hour for work performed in this area.

In addition to their own self-serving affidavits, Plaintiffs submit an affidavit from Philip Russ claiming that Mr. Warner's reasonable rate would be "at least the sum of $350.00 per hour." Mr. Russ' affidavit should be given no weight. Not only is Mr. Russ' position far-fetched, it is also irreconcilable with claims he made in a motion he recently submitted to this Court. In a recent application for fees by Mr. Russ, he requested reimbursement for his own fees at an hourly rate

of $275.  *Sellers v. Hobbs*, Application for Attorneys Fees submitted by Philip Russ on November 25, 2008, attached as **Exhibit C**.  Even given Mr. Russ's extensive experience with the FLSA and his 42 years experience as a trial lawyer, Mr. Russ referred to the $275 per hour rate he requested as a "fully compensatory fee comparable to what is traditional with attorneys compensated by a fee-paying client." *Id.* at p. 5.  Defendant does not necessarily agree that $275 per hour is a reasonable rate in this area, even for someone of Mr. Russ's extensive experience with litigation generally and the FLSA particularly, but it certainly follows that Mr. Russ cannot reasonably contend that Mr. Warner could have a rate of "at least" $350 and as much as $400 per hour.  In Paragraph 6 of his affidavit, Mr. Warner states that his request for $150 per hour for trial in 2003 was for his "first FLSA case," but fails to provide the Court with any evidence that he has worked on any other FLSA litigation after 2003 and prior to this current case.

In Paragraph 4 of his affidavit, Mr. Russ also contends that the rate for plaintiffs' lawyers should be higher than the rate for defense attorneys who are paid "win, lose, or draw." Mr. Russ fails to consider, however, that plaintiffs' counsel may earn a contingent fee in addition to their statutory fee award which gives them the opportunity for significant windfalls if they are successful on large claims for damages—an opportunity that is not available for hourly defense counsel.  Further, Mr. Russ's argument is at odds with the relevant law.  As the Supreme Court held, the fees awarded to all attorneys should be comparable to what "is traditional with attorneys compensated by a fee-paying client." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989).  Thus, Mr. Warner and Mr. Webster have provided no credible justification for entitlement to hourly rates that are roughly double the customary rate for attorneys of comparable skill, experience, and reputation in the Amarillo area.

## CONCLUSION

Defendant respectfully requests that the Court (1) not reopen discovery to conduct an unnecessary review of Defendant's billing records, (2) limit Plaintiffs' recovery of fees and expenses as outlined in Defendant's Response, and (3) determine Plaintiffs' hourly rates based on customary rates for comparable local attorneys with fee-paying clients.

Respectfully submitted,

Bradley W. Howard
State Bar No. 00786452
Robert C. Vartabedian
State Bar No. 24053534
BROWN & FORTUNATO, P.C.
905 South Fillmore, Suite 400 (79101)
P.O. Box 9418
Amarillo, TX 79105-9418
(806) 345-6300 Telephone
(806) 345-6363 Facsimile
bhoward@bf-law.com Email
rvartabedian@bf-law.com Email

By:   /s/ Bradley W. Howard
      Bradley W. Howard

**ATTORNEYS FOR DEFENDANT**

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document and that a true and correct copy was served on the parties listed below through the electronic case filing system if the Notice of Electronic Filing indicated that the parties received it or otherwise by mailing a copy by Certified Mail, Return Receipt Requested, to the parties this 16th day of November, 2009.

Michael A. Warner
The Warner Law Firm
101 S.E. 11th, Suite 301
Amarillo, TX 79101

Jason C. Webster
Matthews & Associates
2905 Sackett
Houston, TX 77098

/s/ Bradley W. Howard
Bradley W. Howard

2027476.DOCX



TEXAS TECH UNIVERSITY LAW LIBRARY
3 1296 00241 6755

# Awards of Attorneys Fees by Federal Courts, Federal Agencies and Selected Foreign Findings

## Mary V. Capisio

**EXHIBIT A**

# AWARDS OF ATTORNEYS FEES BY FEDERAL COURTS, FEDERAL AGENCIES AND SELECTED FOREIGN COUNTRIES

MARY V. CAPISIO (EDITOR)

Novinka Books
New York

**Senior Editors:** Susan Boriotti and Donna Dennis
**Coordinating Editor:** Tatiana Shohov
**Office Manager:** Annette Hellinger
**Graphics:** Wanda Serrano
**Editorial Production:** Jennifer Vogt, Matthew Kozlowski and Maya Columbus
**Circulation:** Ave Maria Gonzalez, Indah Becker, Raymond Davis
            and Vladimir Klestov
**Communications and Acquisitions:** Serge P. Shohov

*Library of Congress Cataloging-in-Publication Data*
*Available Upon Request*

ISBN 1-59033-246-6

Copyright © 2002 by Nova Science Publishers, Inc.
            400 Oser Ave, Suite 1600
            Hauppauge, New York 11788-3619
            Tele. 631-231-7269        Fax 631-231-8175
            e-mail: Novascience@earthlink.net
            Web Site: http://www.novapublishers.com

All rights reserved. No part of this book may be reproduced, stored in a retrieval system or transmitted in any form or by any means: electronic, electrostatic, magnetic, tape, mechanical photocopying, recording or otherwise without permission from the publishers.

The publisher has taken reasonable care in the preparation of this book, but makes no expressed or implied warranty of any kind and assumes no responsibility for any errors or omissions. No liability is assumed for incidental or consequential damages in connection with or arising out of information contained in this book.

This publication is designed to provide accurate and authoritative information with regard to the subject matter covered herein. It is sold with the clear understanding that the publisher is not engaged in rendering legal or any other professional services. If legal or any other expert assistance is required, the services of a competent person should be sought. FROM A DECLARATION OF PARTICIPANTS JOINTLY ADOPTED BY A COMMITTEE OF THE AMERICAN BAR ASSOCIATION AND A COMMITTEE OF PUBLISHERS.

*Printed in the United States of America*

# COMMON LAW EXCEPTIONS TO THE AMERICAN RULE

Common law exceptions to the American rule are "unquestionably assertions of inherent power in the courts to allow attorneys' fees in particular situations, unless forbidden by Congress." *Alyeska*, 421 U.S. at 259. The two major exceptions are cases in which a party at its own expense creates a fund or achieves a substantial benefit in which others share, and cases in which a party acts in bad faith. A former third exception, cases in which a plaintiff acts as a "private attorney general" in effectuating important public policy, was eliminated by the Supreme Court in *Alyeska*.

## Common Benefit Doctrine

"In the absence of a statutory prohibition, the federal courts have authority to award attorneys' fees from a fund to a party who, having a common interest with other persons, maintains a suit for the common benefit and at his own expense, resulting in the creation or preservation of a fund, in which all those having the common interest share." Annotation, 8 L.Ed.2d 894, 905 (1963). This exception to the American rule does not shift the cost of attorneys' fees to the losing party, but rather to those who benefit from the suit. The doctrine was originally conceived in *Trustees v. Greenough*, 105 U.S. 527 (1881), a case against trustees often eleven million acres of land who had collusively sold hundreds of thousands of those acres at nominal prices. One beneficiary, after eleven years of litigation at his own expense, recaptured the assets and presented a claim for reimbursement of attorneys' fees. The Supreme Court approved the award, writing that "if the complainant is not a trustee, he has at least acted the part of a trustee in relation to the common interest." *Id.* at 532.

In *Mills v. Electric Auto-Lite* Co., 396 U.S. 375, 392 (1970), the Supreme Court held that under the common benefit doctrine there is no requirement "that the suit actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses." *Mills* was a stockholders' derivative suit, a type of case which, the Court noted, may bring substantial non-pecuniary benefits.

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), was a successful class action in which over $3 million in damages were awarded. Some class members collected their shares of the damages, but others did not. The district court, invoking the common benefit doctrine, ordered that the plaintiffs' attorneys be awarded their fees from the total amount of the judgment, concluding that it was equitable for all class members claiming and non-claiming alike — to bear *a pro rata* share of the costs of producing the judgment in their favor. The defendant objected to use of the unclaimed money for this purpose, arguing that the ultimate disposition of the unclaimed money had not been decided. But the Supreme Court affirmed the award of attorneys' fees, holding:

(pp. 2-3 of Plaintiffs' Reply)

4                                      Henry Cohen

> The common-fund doctrine, as applied in this case, is entirely consistent with the American rule against taxing the losing party with the victor's attorney's fees. Boeing presently has no interest in any part of the fund. Any right that Boeing may establish to the return of the money eventually claimed is contingent on the failure of the absentee class members to exercise their present rights of possession. Although Boeing itself cannot be obliged to pay fees awarded to the class lawyers, its latent claim against unclaimed money in the judgment fund may not defeat each class member's equitable obligation to share the expenses of litigation.

*Id.* at 481-482.

## Bad Faith Exception

In *Hall v. Cole,* 412 U.S. 1, 5 (1973), the Supreme Court wrote:

> [I]t is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons....' In this class of cases, the underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant.

A fee award under the bad faith exception requires subjective bad faith— "some proof of malice entirely apart from inferences arising from the possible frivolous character of a particular claim." *Copeland v. Martinez,* 603 F.2d 981, 991 (D.C. Cir. 1979), *cert. denied,* 444 U.S. 1044 (1980).

In *Hall v. Cole,* the Supreme Court wrote: "It is clear.... that 'bad faith' may be found, not only in the actions that led to the lawsuit, but in the conduct of the litigation." 412 U.S. at 15. Subsequently, as another court wrote: "Federal courts have applied [the bad faith] exception both when bad faith occurred in connection with the litigation and when it was an aspect of the conduct that gave rise to the lawsuit."[6] However, some courts have refused to apply the bad faith exception to a party's underlying claim, noting that the Supreme Court's statement in *Hall v. Cole* had concerned the common benefit exception, not the bad faith exception.[7]

---

[6]   Nepera Chemical, Inc. v. Sea-Land Service, 794 F2d 688, 701 (D.C. Cir. 1986).

[7]   *See, e.g.,* Sanchez v. Rowe, 870 F.2d 291, 295 (5th Cir. 1989) ("We hold that the requisite bad faith may be found in a party's conduct in response to a substantive claim, whether before or after the action is filed, but it may not be based on a party's conduct forming the basis for that substantive claim" (emphasis in original)). In *Shimman v. International Union of Operating Engineers,* 744 F.2d 1226, 1231 (6th Cir. 1984) (en banc), *cert. denied,* 469 U.S. 1215 (1985), the court wrote: "To allow an award of attorneys' fees based on bad faith in the act underlying the substantive claim would not be consistent with the rationale behind the American Rule regarding attorneys' fees. ...Attorneys' fees incurred while curing the original wrong are not compensable because they represent the cost of maintaining open access to an equitable system of justice." Attorneys' fees incurred as the result of

*(handwritten note in right margin:)* (p. 3 of Plaintiffs' Reply)

14                                        Henry Cohen

In Title II and Title VII [of the Civil Rights Act of 1964] cases the Fifth Circuit has
held that the defendant's conduct, be it negligent or intentional, in good faith or bad,
is irrelevant to an award of attorneys' fees [citations omitted]. We now hold that,
consistent with congressional intent, the same standard should apply to section 1988.

In *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754,755,761
(1989), the Supreme Court held that, under Title VII of the Civil Rights Act of 1964, a
court may "award attorney's fees against intervenors who have not been found to have
violated the Civil Rights Act or any other federal law... only where the intervenors'
action was frivolous, unreasonable, or without foundation."

The dual standard has also been held applicable to the attorneys' fees provisions
in federal environmental statutes.[26] However, it apparently is "more difficult for an
environmental plaintiff than a civil rights plaintiff to recover an attorney fee."[27]

The Supreme Court has held that the dual standard does not apply under the
attorneys' fees provision of the Copyright Act, 17 U.S.C. § 505, which, like those of
the civil rights statutes, does not distinguish on its face between plaintiffs and
defendants. In *Fantasy, Inc. v. Fogerty*, 510 U.S. 717, 527 (1994), the Court held that,
in contrast with the civil rights statutes, under the Copyright Act, "defendants who
seek to advance a variety of meritorious copyright defenses should be encouraged to
litigate them to the same extent that plaintiffs are encouraged to litigate meritorious
claims of infringement." The Court rejected both the dual standard and "the British
Rule for automatic recovery of attorney's fees by the prevailing party.
Prevailing plaintiffs and prevailing defendants are to be treated alike, but
attorney's fees are to be awarded to prevailing parties only as a matter of the court's
discretion." *Id*. at 534.

## THE CONCEPT OF PREVAILING PARTY

The phrase "prevailing party" is not limited to a victor only after entry of a final
judgment following a fill trial on the merits. "The fact that respondent prevailed
through a settlement rather than through litigation does not weaken her claim to fees."
*Maher v. Gagne*, 448 U.S. 122, 129 (1980). Permitting fee awards upon favorable
settlements encourages prevailing parties to settle, thereby lessening docket
congestion, and it prevents losing parties from escaping liability for fees merely by
conceding cases before final judgment.

(p. 4 of
Plaintiffs'
complaint

---

[26]  Consolidated Edison Co. v. Realty Investment Associates, 524 F. Supp. 150 (S.D.N.Y. 1981).
[27]  Mary Frances Derfner and Arthur D. Wolf, 1 COURT AWARDED ATTORNEY FEES, ¶ 8.02[2], pp.
      8-9 (Matthew Bender, 1997) (attributing this fact to the Supreme Court's decision 111 *Ruckelshaus*,
      discussed below at p. 16).

The simplest means of providing for an award is through a stipulation in the settlement that a particular party has prevailed and that a specified amount constitutes reasonable attorneys' fees. It has been held that, in settled cases in which courts are called upon to determine entitlement to attorneys' fees, judges should engage in "a close scrutiny of the totality of circumstances surrounding the settlement, focusing particularly on the necessity for bringing the action and whether the party is the successful party with respect to the central issue." Use of this standard will prevent fee awards in "nuisance settlements."[28]

Plaintiffs may also be deemed prevailing for purposes of attorneys' fees when no judgment or settlement occurs, but their suit serves as a catalyst in prompting the defendant to alter his conduct. One court held that, to recover fees in these circumstances, plaintiffs must "establish causation between their litigation and 'some of the benefits' they sought."[29] However, another court said that the term "prevailing party" in Title VII of the Civil Rights Act of 1964 should not be "extended beyond a courtroom context to include actual effect on corporate policy."[30] In addition, in dictum in *Farrar v. Hobby*, 506 U.S. 103, 111 (1992), the Supreme Court said that to be a prevailing party under 42 U.S.C. § 1988(b), "[t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought... or comparable relief through a consent decree or settlement...." However, the issue in this case was the extent to which a plaintiff who wins only nominal damages is entitled to a fee award, and the Court did not address the issue of plaintiffs who serve merely as catalysts.[31]

In cases that are litigated to conclusion, a party may be deemed to have prevailed for purposes of a fee award prior to the losing party's having exhausted its final appeal. However, a party that prevails at the trial level will ultimately be entitled to a fee award only if it finally prevails on appeal.[32] A party awarded fees upon prevailing at the trial level apparently may be precluded from collecting them pending appeal; Federal Rule of Civil Procedure 62 (28 U.S.C. App. Rule 62) provides for a stay of proceedings to enforce a judgment pending appeal. If a party that prevails at the trial

[28]   Parker v. Matthews, 411 F. Supp. 1059, 1064 (D.DC. 1976), *aff'd sub nom.* Parker v. Califano, 561 F.2d 320 (D.C. Cir. 1977).
[29]   NAACP v. Wilmington Medical Center, Inc., 689 F.2d 1161, 1167 (3d Cir. 1983), *rehearing denied,* 693 F.2d 22 (3d Cir. 1983), *cert. denied,* 460 U.S. 1052 (1983).
[30]   Williams v. General Foods Corp., 492 F.2d 399, 408 (7th Cir. 1974).
[31]   The holding of *Farrar v. Hobby* is discussed at page 18, below. On the implications for the catalyst theory of the dictum quoted above, see, Joel H. Trotter, *The Catalyst Theory of Civil Rights Fee Shifting After* Farrar v. Hobby, 80 Virginia Law Review 1429 (1994).
[32]   *See,* Poelker v. Doe, 432 U.S. 519, 521 n.2 (1977). Fee awards may include amounts incurred in litigation over the fee award. *See,* 16 ALR Fed 643, § 10. However, in *Jensen V. Guy of San Jose,* 806 F.2d 899 (9th Cir. 1986) (en banc), the defendant prevailed on the merits and was awarded fees. On appeal, the fee award (but not the decision on the merits) was overturned, and the plaintiff was held ineligible to recover attorneys' fees incurred in overturning the fee award.

307(f) should not be restricted to prevailing parties, it meant, the Court held, merely to eliminate these restrictive readings of the phrase "prevailing party," Specifically, Congress meant only "to expand the class of parties eligible for fee awards from prevailing parties to *partially prevailing parties* — parties achieving *some success,* even if not major success" (emphasis supplied by Court). *Id.*[35]

In *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983), the Supreme Court noted that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." However, if the plaintiffs achieve only *some* of the benefit, then they will not necessarily be entitled to a full award of attorneys' fees. The Court addressed the issue of whether, under 42 U.S.C. § 1988(b), "a partially prevailing plaintiff may recover an attorney's fee for legal services on unsuccessful claims." *Id.* at 426. The Court held:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* At 440.

As for how to determine the amount of fees that is reasonable when the plaintiff achieves only limited success, the Court wrote:

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

*Id.* at 436-437.

---

[35]  1996, the Equal Access to Justice Act was amended to authorize fees to losing parties in some instances; *see,* page 8, *supra.* In footnote 1 of its opinion *Ruckelshaus,* the Court wrote: "Sixteen federal statutes and § 304(d) of the Clear Air Act contain provisions for awards of attorney's fees identical to § 307(f)." It then listed 13 of them. The others are the Solid Waste Disposal Act, 42 U.S.C. § 6792(e), and two sections of the Toxic Substances Control Act (TOSCA), 15 U.S.C. §§ 2619(c)(2) and 2620(b)(4)(C). (The Court did list a third section of TOSCA, 15 U.S.C. § 2618(d)). The Court then wrote: "As explained below [it did not explain below], the interpretation of 'appropriate' in § 307(f) controls construction of the term in these statutes." The interpretation of these other statutes had not been at issue in the case.

3613(c).[48] Presumably, the dual standard that applies to the fee-shifting provisions of other federal civil rights statutes will apply here. The court may appoint an attorney for the plaintiff 42 U.S.C. § 3613(b).

In addition, the Secretary of Housing and Urban Development may bring an administrative proceeding, and the Attorney General may bring a civil action, against a violator. In either case, the prevailing party, other than the United States, may recover a reasonable attorney's fee and costs, except that the United States shall be liable for fees and costs only to the extent provided by the Equal Access to Justice Act. 42 U.S.C. §§ 3612(p), 3614(d).

## Fair Labor Standards Act

The Fair Labor Standards Act, among other things, prohibits employers from discriminating on the basis of sex in the amount of wages paid employees for equal work, and it prohibits labor organizations from causing employers to so discriminate. 29 U.S.C. § 206(d). Section 216(b) of Title 29 provides that in actions to enforce such provision, the court:

> shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

## Age Discrimination in Employment Act of 1967

The Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 et seq., prohibits, with certain exceptions, employers, employment agencies, and labor organizations from discriminating on the basis of age against individuals who are at least 40 years old. Section 7(b) of the Act, 29 U.S.C. § 626(b), incorporates the attorneys' fees provision of the Fair Labor Standards Act, 29 U.S.C. § 216(b).[49]

In 1974, a section was added to the ADEA to protect federal employees from age discrimination. 29 U.S.C. § 633a. However, this section provides that other provisions of the ADEA shall not apply in the case of federal employees (29 U.S.C. § 633a(f)), and the section makes no reference to attorneys' fees. Consequently, it is unsettled whether they may be awarded to federal employees who prevail at the administrative or the judicial level.[50]

---

[48]  Cases under this provision are collected at 38 ALR Fed 164.
[49]  See, 24 ALR Fed 808, 862 on this point; see, 99 ALR Fed 30 on fee awards under the ADEA generally.
[50]  See, e.g., Lewis v. Federal Prison Industries, Inc., 953 F.2d 1277 (11th Cir. 1992); Palmer v. General Services Administration, 787 F.2d 300 (8th Cir. 1986).

*(p. 6 of Plaintiffs Reply)*

52                                     Henry Cohen

effected no change in principle." *Reconstruction Finance Corp. v. J.G. Menihan Corp.*, 312 U.S. 81, 83 (1941).

Costs were made allowable against the United States in 1966 by 28 U.S.C. § 2412(a). that provides:

> Except as otherwise specifically provided by statute a judgement for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States....

A Senate report said that the 1966 change was enacted to correct the —

> disparity of treatment between private litigants and the United States concerning the allowance of court costs... . As things now stand, only in rare cases can costs be awarded against the United States in the event that it is the losing party. On the other hand when it sues on a claim and wins, it can collect full costs.[74]

Whether this disparity has been entirely eliminated appears questionable, because Rule 54(d), which allows costs against parties other than the United States, provides that costs "shall be allowed as of course," whereas § 2412, which allows costs against the United States, provides only that costs "may be awarded."

## DETERMINING A REASONABLE ATTORNEYS' FEE

The amount of attorneys' fees to be awarded pursuant to a statutory or common law exception to the American rule "should, as a general rule, be fixed in the first instance by the District Court, after hearing evidence as to the extent and nature of the services rendered." *Perkins v. Standard Oil of California*, 399 U.S. 222, 223 (1970).

The evidence presented to the district court must be relatively specific:

> It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainment of each attorney. But without some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates, the court cannot know the nature of the services for which compensation is sought.

(p. 6 of Plaintiffs' Reply )

---

[73]  *See, Attorneys' Fees and Expert Witness Fees Under the Civil Rights Act of 1991* (CRS Report No. 91-818A, Nov. 20, 1991).

[74]  S.Rep. No. 1329, 89th Cong., 2d Sess. (1966); *reprinted in* 1966 U.S.C.C.A.N. 2527, 2528.

*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973).

In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley I)*, 478 U.S. 546, 562-566 (1986), the Supreme Court explained "the proper measure for determining the 'reasonableness' of a particular fee award":

> One method, first employed by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (1974), involved consideration of 12 factors. *Johnson* was widely followed by other courts, and was cited with approval by both the House and the Senate when [42 U.S.C.] § 1988 was enacted....[75] Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results.
> For this reason, the Third Circuit developed another method of calculating "reasonable" attorney's fees. This method, known as the "lodestar" approach, involved two steps. First, the court was to calculate the "lodestar," determined by multiplying the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (CA3 1973) (*Lindy I*). Second, using the lodestar figure as a starting point, the court could then make adjustments to this figure, in light of "'(1) the contingent nature of the case, reflecting the likelihood that hours were invested and expenses incurred without assurance of compensation; and (2) the quality of the work performed as evidenced by the work observed, the complexity of the issues and the recovery obtained....'"
> We first addressed the question of the proper manner in which to determine a "reasonable" attorney's fee in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). We there adopted a hybrid approach that shared elements of both the *Johnson* and the lodestar method of calculation. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate...." To this extent, the method endorsed in *Hensley* follows the Third Circuit's description of the first step of the lodestar approach. Moreover, we went on to state: "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward.... We then took a more expansive view of what those "other considerations" might be, however, noting that

---

[75] Footnote 7 of the Court's opinion states: "The 12 factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d, at 717-719. These factors were taken from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2-106 (1980)." They are now embodied in the American Bar Association Model Rules of Professional Conduct, Rule 1.5 (1983).

54                                Henry Cohen

"[the] factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714, 717-719 (CA5 1974), though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.*, at 434, n. 9 (citation omitted).

We further refined our views in *Blum v. Stenson* 465 U.S. 886 (1984).... *Blum* also limited the factors which a district court may consider in determining whether to make adjustments to the lodestar amount. Expending on our earlier finding in *Hensley* that many of the *Johnson* factors "are subsumed within the initial calculation" of the lodestar, we specifically held in *Blum* that the "novelty [and] complexity of the issues," "the special skill and competence of counsel," the "quality of representation," and the "result obtained from the litigation are presumably fully reflected in lodestar ... and thus cannot serve as independent bases for increasing the basic fee award. 465 U.S., at 898-900. Although upward adjustments of the lodestar figure are still permissible, *id.*, at 901, such modifications are proper only in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the lower courts.[76]

In short, the lodestar figure includes most, if not all of the relevant factors comprising a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.[77]

In *Delaware Valley I*, the Court indicated that to be entitled to an upward adjustment, a prevailing party must show that it would have been unable "to obtain counsel without any promise of reward for extraordinary performance." It must present "specific evidence as to what made the results it obtained... so 'outstanding.'" It must show "that the lodestar figure... was far below awards made in similar cases where the court found equally superior quality of performance." Finally, to adjust a fee upward, a court must make "detailed findings as to why the lodestar amount was unreasonable, and in particular as to why the quality of representation was not reflected in the number of hours times the reasonable hourly rate." 478 U.S. at 567-568. The Court left open "the question of upward adjustment based on the likelihood of success, or to put it another way, the risk of loss." *Id.* at 568. By "risk of loss" the Court apparently meant an attorney's risk of losing and not being paid at all because he had agreed to represent his client on a contingency basis, being paid out of the winnings or not at all.

The Court answered this question in a second opinion in the same case. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley*

[76] Upward adjustments are also called "bonuses." The Supreme Court has stated that it thinks the characterization "upward adjustments" is "fairer." *Blum* v. *Stenson*, 465 U.S. at 896 n.12. Upward adjustments may be made "by way of multipliers or enhancement of the lodestar." *Delaware Valley I*, 478 U.S. at 568.

[77] The dissent thought that the Court had "improperly heightened the showing required to the point where it may be virtually impossible for a plaintiff to meet." 478 U.S. at 569.

*(handwritten margin note: pp. 8-9 of Plaintiffs' Reply)*

*II*.), 483 U.S. 711 (1987), which was a 4-1-4 decision. Justice O'Connor concurred in parts of each plurality, which makes her opinion pivotal in determining what a majority of the Court decided in the case. Five justices (Justice O'Connor and the four who joined Justice Blackmun's dissent) decided that upward adjustments generally are appropriate in contingency fee cases. However, five justices (Justice O'Connor and the four who joined Justice White's plurality), decided that, even if "typical fee-shifting statutes are construed to permit supplementing the lodestar in appropriate cases by paying counsel for assuming the risk of nonpayment... it was error to do so in this case." 483 U.S. at 728.

Subsequently, however, in *Burlington v. Dague*, 505 U.S. 557, 567 (1992), the Court, "[a]dopting the position set forth in Justice White's opinion in *Delaware Valley II*" held "that enhancement for contingency is not permitted under the fee-shifting statutes at issue." Those statutes were § 7002(e) of the Solid Waste Disposal Act, 42 U.S.C. § 6972(e), and § 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d). However, the Court noted that the relevant language of these statutes "is similar to that of many other federal fee-shifting statutes...; our case law construing what is a 'reasonable' fee applies uniformly to all of them." *Id.* at 562. The Court's primary reason for its decision in *Burlington* was "that an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar." *Id.*

In *Blum v. Stenson*, 465 U.S. 886, 895 (1984), the Supreme Court held that "'reasonable fees' are to be calculated under [42 U.S.C.] § 1988 according to the prevailing market rates in the relevant community, regardless of whether the plaintiff is represented by private or nonprofit counsel."[78] The Court rejected the position that awards be calculated according to the cost of providing legal services, which for legal aid groups that pay low salaries is usually less than the prevailing market rates.[79]

The Handicapped Children's Protection Act of 1986, Public Law 99-372, which added an attorneys' fees provision to the Education of the Handicapped Act, adopted

---

[78]  In *Blum v. Stenson*, the Court also contrasted calculation of fee awards under the common fund doctrine (see pp. 2-3 of this report) and under § 1988. Under the former "a reasonable fee is based on a percentage of the fund bestowed on the class," while "a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation." 465 U.S. at 900 n.16. Risk multipliers are also more permissible in common fund cases. See, e.g., Florin v. Nationsbank of Georgia, 34 F.3d 560 (7th Cir. 1994); *In re* Washington Public Power Supply System Securities Litigation, 19 F.3d 1291 (9th Cir. 1994); Swedish Hospital Corp. v. Shalala, 1 F.3d 1261 (D.C. Cir. 1993); Camden I Condominium Association v. Dunkle., 946 F.2d 768 (11 Cir. 1991); Skelton v. General Motors Corp., 860 F.2d 250 (7th Cir. 1988).

[79]  Funds received from the Legal Services Corporation may not be used to provide legal assistance with respect to fee-generating cases, with some exceptions. 42 U.S.C. § 2996f(b)(l). A "fee-generating" case includes any case that "reasonably may be expected to result in a fee for legal services from an award to a client, from public funds, or from the opposing party." 45 C.F.R. § 1609.2, Public Law 104-134, § 504, provides: "None of the funds appropriated in this Act to the Legal Services Corporation may be used to provide financial assistance to any person or entity...(13) that claims (or whose employee claims), or collects and retains, attorneys' fees pursuant to any Federal or State law permitting or requiring the awarding of such fees..."

(p. 9 of
Plaintiffs'
Reply )

Order Code 94-970

# CRS Report for Congress

## Awards of Attorneys' Fees
## by Federal Courts and Federal Agencies

**Updated June 20, 2008**

Henry Cohen
Legislative Attorney
American Law Division



**Congressional
Research
Service**

Prepared for Members and
Committees of Congress

**EXHIBIT B**

# Awards of Attorneys' Fees by Federal Courts and Federal Agencies

## Summary

In the United States, the general rule, which derives from common law, is that each side in a legal proceeding pays for its own attorney. There are many exceptions, however, in which federal courts, and occasionally federal agencies, may order the losing party to pay the attorneys' fees of the prevailing party. The major common law exception authorizes federal courts (not agencies) to order a losing party that acts in bad faith to pay the prevailing party's fees.

There are also roughly two hundred statutory exceptions, which were generally enacted to encourage private litigation to implement public policy. Awards of attorneys' fees are often designed to help to equalize contests between private individual plaintiffs and corporate or governmental defendants. Thus, attorneys' fees provisions are most often found in civil rights, environmental protection, and consumer protection statutes.

In addition, the Equal Access to Justice Act (EAJA) makes the United States liable for attorneys' fees of up to $125 per hour in many court cases and administrative proceedings that it loses (and some that it wins) and fails to prove that its position was substantially justified. EAJA does not apply in tax cases, but a similar statute, 26 U.S.C. § 7430, does.

Most Supreme Court decisions involving attorneys' fees have interpreted civil rights statutes, and this report focuses on these statutes. It also discusses awards of costs other than attorneys' fees in federal courts, how courts compute the amount of attorneys' fees to be awarded, statutory limitations on attorneys' fees, and other subjects. In addition, it sets forth the language of all federal attorneys' fees provisions, and includes a bibliography of congressional committee reports and hearings concerning attorneys' fees.

In 1997, Congress enacted a statute allowing awards of attorneys' fees to some prevailing criminal defendants.

CRS-15

addressed the issue has held that relief obtained via a preliminary injunction can, under appropriate circumstances, render a party 'prevailing.'"[31]

In *Hewitt v. Helms*, 482 U.S. 755, 760 (1987), the Supreme Court noted that a plaintiff must "receive at least some relief on the merits of his claim before he can be said to prevail." Thus, it held in that case that, under 42 U.S.C. § 1988(b), a plaintiff was not entitled to a fee award where "[t]he most that he obtained was an interlocutory ruling [by a court of appeals] that his complaint should not have been dismissed for failure to state a constitutional claim." The court of appeals had "explicitly left it to the District Court 'to determine the appropriateness and availability of the requested relief ...; the Court of Appeals granted no relief of its own, declaratory or otherwise." *Id.*

(pp. 4-5 of Plaintiffs' Reply)

A "prevailing party," however, is not limited to a victor only after entry of a final judgment following a full trial on the merits. "The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees." *Maher v. Gagne*, 448 U.S. 122, 129 (1980). Permitting fee awards upon favorable settlements encourages prevailing parties to settle, thereby lessening docket congestion, and it prevents losing parties from escaping liability for fees merely by conceding cases before final judgment.

The simplest means of providing for an award is through a stipulation in the settlement that a particular party has prevailed and that a specified amount constitutes reasonable attorneys' fees. It has been held that, in settled cases in which courts are called upon to determine entitlement to attorneys' fees, judges should engage in "a close scrutiny of the totality of circumstances surrounding the settlement, focusing particularly on the necessity for bringing the action and whether the party is the successful party with respect to the central issue." Use of this standard will prevent fee awards in "nuisance settlements."[32]

In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, the Supreme Court held that a party is not a "prevailing party" under federal fee-shifting statutes if it "has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."[33] Prior to this decision, most federal courts of appeals had recognized the "catalyst theory" and awarded fees in such circumstances.

In cases that are litigated to conclusion, a party may be deemed to have prevailed for purposes of a fee award prior to the losing party's having exhausted its final appeal. However, a party that prevails at the trial level will ultimately be

---

[31] People Against Police Violence v. City of Pittsburgh, 520 F.3d 226, 232-233 (3d Cir. 2008).

[32] Parker v. Matthews, 411 F. Supp. 1059, 1064 (D.D.C. 1976), *aff'd sub nom.* Parker v. Califano, 561 F.2d 320 (D.C. Cir. 1977).

[33] 532 U.S. 598, 600 (2001).

entitled to a fee award only if it finally prevails on appeal.[34]  A party awarded fees upon prevailing at the trial level apparently may be precluded from collecting them pending appeal; Federal Rule of Civil Procedure 62 (28 U.S.C. App. Rule 62) provides for a stay of proceedings to enforce a judgment pending appeal.  If a party that prevails at the trial level should collect a fee award and subsequently lose the case on appeal, it apparently would be obligated to return the money.

A party may also be deemed to have prevailed even before final disposition at the trial level.  In *Bradley v. Richmond School Board*, 416 U.S. 696, 723 (1974), the Supreme Court wrote:

> To delay a fee award until the entire litigation is concluded would work a substantial hardship on plaintiffs and their counsel, and discourage the institution of actions....  A district court must have the discretion to award fees and costs incident to the final disposition of interim matters.

At what stage of the litigation may a party be entitled to an interim award?  In *Bradley* the Court would:

> say only that the entry of any order that determines substantial rights of the parties may be an appropriate occasion upon which to consider the propriety of an award of counsel fees....

*Id.* at 723 n.28.

In *Bradley*, the statute under which fees were awarded, 20 U.S.C. § 1617 (since repealed), permitted awards only "[u]pon entry of a final order by a court of the United States."  The Court, in allowing an interim award under this statute, noted that "many final orders may issue in the course of litigation."  *Id.* at 723.  In the case of a statute or common law rule that permits fee awards to prevailing parties but does not expressly make entry of a final order a prerequisite for such awards, fee awards may be appropriate at some stage of the litigation prior to entry of an interim final order.

Some courts have required recipients of interim awards to post bonds to insure recovery of the awards and interest should the recipients ultimately lose.[35]

In *Hanrahan v. Hampton*, 446 U.S. 754 (1980), a district court had directed verdicts for the defendants, but the court of appeals had reversed and ordered a new trial.  The court of appeals had also ordered the defendants, under the Civil Rights

---

[34] *See*, Poelker v. Doe, 432 U.S. 519, 521 n.2 (1977).  Fee awards may include amounts incurred in litigation over the fee award.  *See*, 16 ALR Fed 643, § 10.  However, in *Jensen v. City of San Jose*, 806 F.2d 899 (9th Cir. 1986) (en banc), the defendant prevailed on the merits and was awarded fees.  On appeal, the fee award (but not the decision on the merits) was overturned, and the plaintiff was held ineligible to recover attorneys' fees incurred in overturning the fee award.

[35] Nicodemus v. Chrysler Corp. — Toledo Machining Plant, 445 F. Supp. 559 (N.D. Ohio 1977), *rev'd on other grounds*, 596 F.2d 152 (6th Cir. 1979); Howard v. Phelps, 443 F. Supp. 374 (E.D. La. 1978).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT
### AMARILLO DIVISION

| | | |
|---|---|---|
| Danny Sellers, an individual, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 2-08CV-027-J |
| | § | |
| Hobbs Earth Moving Co., Inc., | § | |
| American Environmental Clean, Ltd. | § | |
| and Mike Hobbs, an individual, | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## APPLICATION AND MEMO BRIEF FOR
## JUDGMENT AND FOR ATTORNEYS FEES

Comes Now, Danny Sellers ("Sellers"), Plaintiff and moves the Court to award him and the opt-ins' counsel attorneys fees.

### I.
### Factual Background

1.01    Plaintiff Danny Sellers filed his original complaint in this action on February 15, 2008 (Dkt. 1). It was titled a "representative action." Plaintiff filed a Motion for Notice and Mail Out on March 24, 2008, (Dkt. 11) to which the Defendants agreed that resulted initially in the following opt-in Plaintiffs, Jerry Lee Bourland, David Dean Brown, Shawn Cobb, Robert Kilpatrick, Gary Lowe, Thomas L. Morrison, Timothy A. Raff and Joel Rainey. The Defendants, although ordered by this Court to do so (Dkt.20) did not provide a complete list of current and former employees for the purpose of opting into the suit. This failure by the Defendants resulted in a supplemental mail-out to rectify the problem (Dkt. 43).

### EXHIBIT C

1.02    Defendants admitted in response to requests to admit that they did not pay overtime at time and one-half over 40 hours in a week (App. 2-5) and further admitted that such failure to do so was willful (App. 4). Thereafter Defendants made an Offer of Judgment pursuant to F.R.C.P. Rule 68 (App. 7-24). Plaintiffs partially accepted said offer (App. 26-27). Defendants in response to Plaintiff's Second Set of Request to Admit (App. 29-36) revised its admission as to damages upward (App. 33-34) and made a new Offer of Judgment as to opt-in plaintiffs Timothy Raff and David Dean Brown (App. 38-39 and 41-42).

1.03    Defendants object to the amount of attorneys fees sought by Plaintiffs. Defendants did not object to the entry of judgment in favor of Plaintiffs in the following amounts:

|  | Plaintiff | Agreed Judgment Amount |
|---|---|---|
| 1) | Danny Sellers | $ 19,720.50 |
| 2) | David Dean Brown | 17,187.50 |
| 3) | Shawn Cobb | 1,050.00 |
| 4) | Gary Lowe | 30,094.00 |
| 5) | Joel Rainey | 24,721.00 |
| 6) | Robert Kilpatrick | 15,609.75 |
| 7) | Timothy Raff | 4,667.00 |
| 8) | Thomas L. Morrison | 1,752.00 |
| 9) | Jerry L. Bourland | 2,230.50 |
|  | Total Judgment | $117,032.25 |

This Honorable Court entered that requested Interlocutory Judgment on November 21, 2008 (Dkt. 49) (App. 50-51).

### Defendants have Avoided Liability by Limitations and Others Failing to Opt-In

1.04    The Defendants have avoided liability and have been unjustly enriched as a result of Defendants' conscious disregard of the Fair Labor Standards Act (FLSA) in refusing to pay overtime at time and one-half by an amount of at least $175,844.67, see schedule (App. 47-48).

Defendants have been unjustly enriched by these amounts as a result of (1) additional Plaintiffs failing to opt-in (some of which still work for Defendant(s)) or (2) the application of the applicable statute of limitations. Plaintiff further shows this Court that the amounts that Defendants avoided paying as a result of others failing to opt-in or by the operation of the statute of limitations should be considered in awarding attorneys fees.

## II.
### Motion for Entry of Judgment

2.01    Plaintiff previously moved for judgment (Dkt. 45). Plaintiffs did not accept Defendants' offer of judgment as to attorneys fees and will leave that decision to this Honorable Court pursuant to this application in the amount of $66,117.62 to the date of filing this application. Mike Hobbs' deposition was taken November 14, 2008, and Victoria Norman's deposition was taken on November 21, 2008. Plaintiffs will supplement this fee application when additional discovery is completed, if any.

2.02    Defendants having made two offers of judgment and Plaintiffs having accepted the same in part, Plaintiffs are entitled to the entry of judgment as a matter of law. F.R.C.P. 68 states in its pertinent part:

> "(a) **Making an Offer; Judgment on an Accepted Offer.** More than 10 days before the trial begins, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 10 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must enter judgment."

> \* \* \*

Accordingly, the Court entered judgment in Plaintiffs' favor - see Interlocutory Judgement as to Liability and Damages (Dkt. 45) and see judgment (App. 50-51).

## III.
### Standards for Awards of Attorney's Fees

3.01    Before a plaintiff can recover attorney's fees and costs pursuant to 29 U.S.C. § 216(b), she must demonstrate that she is a prevailing party. *Commonwealth Oil Refining Co., Inc. v. EEOC*, 720 F.2d 1383, 1385 (5th Cir. 1983). To determine if the primary relief sought has been obtained the Court should compare the allegations made with the results obtained. *Commonwealth*, 720 F.2d at 1385. A plaintiff may be considered a prevailing party for attorneys' fees purposes "if plaintiff succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 103 S.Ct. 1993, 1939 (1983). "This is a generous formulation. . ." *Id.* at 1939. In the instant case, Plaintiffs are clearly prevailing parties as the Defendants admitted liability and a willful violation of the FLSA, see Exhibit "A", and have made two offers of judgment (App. 7-24; App. 38-42) which have been accepted as to liability and damages (App. 26-27; App. 44-45) but not as to attorneys fees. Furthermore, the Court entered judgment in Plaintiffs' favor for $117,032.25 on November 21, 2008 (Dkt. 49).

3.02    To determine what attorneys' fees are reasonable and recoverable, the Court must first determine the "loadstar" amount. The term "loadstar" is defined as "the 'initial estimate of a reasonable attorney's fee . . . properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rates.'" *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). *See also Missouri v. Jenkins*, 109 S.Ct. 2463 (1989) (for discussion of reasonable rate calculation).

3.03    In computing the reasonable number of hours spent in preparation of a case, the

Court must distinguish between "raw" hours and "billable" hours. *Henry v. First Nat'l Bank of*

*Clarksdale*, 603 F.Supp. 658, 664 (N.D. Miss. 1984). The number of actual hours expended on a

particular project will not necessarily be the number of "reasonable hours" which should have

been expended. *Id.* at 661 (citing *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)). Hours

which an attorney would not properly bill to his client should not be billed to an adverse party.

*Id.* at 664. Unnecessary duplication of attorney's efforts should not be compensated. *Johnson v.*

*Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). Additionally, the Court must

find that the application for attorneys' fees filed by Plaintiff's counsel sufficiently allows the Court

to determine what constitutes reasonable attorneys' fees in this action. *See generally Hensley v.*

*Eckerhart*, 461 U.S. 424 (1983); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th

Cir. 1974).

3.04    "The reasonableness of attorney fee awards . . . involves consideration of the

twelve factors set forth by [the Fifth Circuit] in *Johnson*." *Von Clark v. Butler*, 916 F.2d 255,

258 (5th Cir. 1990). "[T]he fee applicant bears the burden of establishing entitlement to an award

and documenting the appropriate hours expended and hourly rates." *Hunsley*, 103 S.Ct. at 1941.

The party seeking an award of fees should submit evidence supporting the hours worked and rates

claimed." *Id.* at 1939. "Where the documentation of hours is inadequate, the district court may

reduce the award accordingly." *Id.* at 1939.

### Discussion of Attorney's Fees Sought to be Awarded

3.05    Plaintiffs' attorneys seek fees to date in the amount of $64,485.00. That amount includes part of the fees for the filing of this motion. Counsel state that they personally worked a total of 218.8 compensable hours to date on this case. They request an hourly rate of $275.00 per hour for both out of court and in-court time. Counsel further seek $1,646.61 in taxable costs in this motion. Additional attorneys fees will be sought, in that, Plaintiff's counsel has requested the deposition of Mike Hobbs' secretary and the Defendants have requested the depositions of all plaintiffs.

### Attorneys' Fees

#### A. *Loadstar*

This case was reduced to judgment by two Rule 68 Offers of Judgment by Defendants and by Plaintiffs' acceptance of the same (App.7-24, 38-42, 26-27, 44-45). The Court is requested to find that the reasonable hourly rate for each attorney is $275.00 per hour on the basis of the rates and practices prevailing in the relevant market. This rate is well in line with those rates prevailing in Amarillo and the community for similar services by trial lawyers of reasonably comparable skill, experience and reputation for this type of professional services. *Jenkins*, 109 S.Ct. at 2470. It grants Plaintiffs a fully compensatory fee comparable to what is traditional with attorneys compensated by a fee-paying client. *Id.* at 2470.

"As a fee applicant, [Plaintiff] has the burden of proving the reasonableness of the number of hours expended on his prevailing claim." *Von Clark*, 916 F.2d at 259. "Part of the applicant's ability to meet his burden includes maintaining billing time records in a manner that would enable the reviewing court to identify each distinct claim." *Von Clark*, 916 F.2d at 259. Summary time

sheets are not sufficient to meet Plaintiffs burden of proof. *Id.* at 259. "A reliable record of the time expended on the prevailing claim which is attached to the Appendix as Exhibits "J" and "K."

As evidence of their hours, counsel submit summary time sheets and invoices for costs advanced (App. 53-62; App. 64-66). Time sheets can and will be produced by the Law Offices of Philip R. Russ, if deemed necessary.

Accordingly, Plaintiffs request the Court find that the loadstar of reasonable and necessary attorney's fees upon which the *Johnson* factors should be applied is $275.00 per hours times 231.40 hours, or $63,635.00 and $45.00 per hour for the paralegal's time times 18.9 hours, or $850.50 for a total of $64,485.50, plus costs of $1,646.61 for a grand total to date of $66,132.11.

### B. *Enhancement of the Loadstar Amount*

Counsel request a significant upward modification of the fee request to $100,000.00.

When a modification of the "loadstar" amount is requested, the fee-award factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), must be considered. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service property; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation and ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. *Id.* at 717-719.[1]

---

[1] The 12th traditional *Johnson* factor, whether the fee is fixed or contingent, will not be discussed because the fact that a case is taken on the risk of nonpayment of attorneys' fees if a party does not prevail is insufficient to enhance the fee award. *Pennsylvania v. Delaware Valley Citizen's Council*, 107 S.Ct. 3078, 3087 (1987)

### What is a Reasonable Fee?

The Supreme Court has repeatedly stressed that the way the local marketplace customarily treats fees is determinative of the way fees should be calculated in a civil rights case. *See, e.g. Blum v. Stenson*, 465 U.S. 886 (1984); *Blanchard v. Bergeron*, 489 U.S. 87 (1989); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987); *Missouri v. Jenkins*, 491 U.S. 274 (1989).

A "reasonable fee" means "a fee that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys." *City of Riverside v. Rivera*, 477 U.S. 561, 591 (Rehnquist, J., dissenting); *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989). It is computed in light of "the traditional billing practices in the profession. . .on the basis of rates and practices prevailing in the relevant market, i.e., 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experiences and reputation.'" *Id.* It is one which grants the successful plaintiff a "fully compensatory fee." and is comparable to what is traditional with attorneys compensated by a fee-paying client. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Missouri v. Jenkins*, 491 U.S. 274, quoting from S.Rep. No. 94-1011, p. 6 (1976), pp. 5908, 5913. Finally, the fee awarded must "yield the same level of compensation that would be available from the market." *Missouri v. Jenkins*, 491 U.S. 274, 285.

### 1. Time and Labor Required

This factor is discussed above.

### 2. Novelty and Difficulty of the Questions

The Court is requested to find that the questions upon which Plaintiff prevailed were somewhat novel given the supplemental mail-out and were moderately complex, especially given

the experience of the attorneys involved, including the need for a supplemental mail-out, recalculation of damages and the significant amount the Defendants escaped liability on due to limitations and some Plaintiffs' failure to opt-in. While claims similar to the causes of actions alleged herein have been litigated in reported circuit and district court cases, a few reported cases have the number of specific claims asserted in this case. The Plaintiffs move the Court to allow hours that will afford adequate compensation for time required by the moderate complexity of the case and the problems incurred as a result of Defendants' discovery upward to $100,000.00.

### 3. Skill Requisite to Perform Legal Services

The Court is asked to find that the skill requisite to properly perform the legal services in this action required attorneys with some experience in FLSA litigation. The Court is respectfully requested to recognize the expertise of the attorneys involved in this case and to reflect that experience in the hourly rate that is requested be awarded.

### 4. Exclusion from other Employment

Counsel has been precluded from accepting a few other cases as a result of the nature of this litigation and the time consumed thereby.

### 5. Customary Fees

The hourly rate sought reflects the customary fees for cases of this type in the Northern District of Texas, Amarillo Division. The rates sought to be awarded are believed reasonable and consistent with the rate charged by similarly experienced litigation attorneys in Amarillo during the period of this litigation.

### 6. Time Limitations Imposed Upon Counsel

Plaintiff's counsel represents to this Court that the time limitations involved in this action were not unusual or of such an exceptional nature as to require an enhancement of the attorneys' fees awarded on that basis although a significant amount of time was incurred.

### 7. Amounts Involved and Results Obtained

Plaintiff's counsel moves the Court to find that the attorney hours asserted are reasonable, and the amount be determined to be a reasonable rate for attorney's fees, and to provide adequate compensation for the success achieved in this case. Plaintiffs' counsel have recovered a judgment in the amount of $117,032.25 (App. 50-51) on behalf of the non-exempt hourly workers with a willful finding. Defendant Mike Hobbs admitted in his deposition that he knew it was against the law to refuse the payment of overtime, but, nevertheless he told everyone he didn't pay overtime (App. 85-86).

### 8. Experience, Reputation and Ability of Counsel

Plaintiffs request that the hourly rate awarded reflects the Court's recognition of the experience, reputation and ability of counsel.

### 9. Undesirability of the Case

Plaintiffs represent to the Court that this case is not undesirable for a plaintiffs attorney.

### 10. Nature and Length of Professional Relationship

There is evidence of a professional relationship between the nine fee applicants and counsel which would cause an enhancement in the fee award. See Sellers' Contract and Assignment of Interest reflecting a forty (40%) percent contingency fee (App. 68-70). Plaintiff and his counsel would show the Court it be unfair to named Plaintiff Danny Sellers for the opt-ins

Application and Memo Brief for
Judgment and For Attorneys Fees

to pay any less than 40% and request an enhancement in excess of 40% by virtue of Defendants'

blatant and willful violation of the FLSA.

### 11. Whether the Fee is Fixed or Contingent

Whether the fee is fixed or contingent is no longer a factor that can be considered. *See*

*City of Burlington v. Dague*, _____ U.S. _____, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

However, Plaintiff Sellers executed a 40% contingent fee contract, see Exhibit "L" (App. 68-70),

and it would not be fair to the parties unless the opt-ins were required to pay any less. Plaintiff

request the Court to approve a fee award against defendants in excess of that amount.

### 12  Fee May Exceed Recovery

The fee awarded by the Court may exceed the recovery for the Plaintiffs. The Court in

*United Finance & Thrift Corporation of Dallas v. Chapman*, 369 S.W.2d 782, 784 (CCA,

Eastland, 1963)

"[2]***

"...It has often been held that allowance of attorney's fees rests in the sound
discretion of the trial court and that a judgment will not be reversed unless it is
shown that the trial court abused its discretion.
...It has been held that recovery of a large attorney's fee is authorized when
claimant's lawyers diligently represented their clients in repeated hearings and
pressed their cause through the reviewing courts while being constantly harassed
by dilatory tactics and that the court and jury had a right to consider the time
necessarily spent by counsel, counsel's ability, the nature of the case, the expenses
necessarily incurred and the character of efforts required." (Omitting citations).

Defendants have engaged in several unlawful practices to avoid the FLSA and also to

defeat payment of proper insurance premiums on his employees as well as unlawfully under

paying withholding taxes by refusing to pay overtime (App. 85-86), that they perpetrated a fraud

upon their insurance carriers by paying workers out of a separate company for time worked in a

week over 40 hours (App. 88-89, 91) and that they improperly reported wages to the Internal

Revenue Service (App. 94-100), see deposition excerpts of Hobbs deposition (App. 80-100).

Defendants have been unjustly enriched by at least the sum of $175,844.67 in sums barred by

limitations or by potential plaintiffs who did not opt-in, (App. 47-48). These factors should be

considered with respect to Plaintiffs' request for an upward adjustment in the requested attorneys

fees.

### IV.
### Reimbursement for Reasonable Expenses

    4.01    Federal law allows for "reasonable costs" of actions to be awarded to attorneys

and paid for by the Defendant. 29 U.S.C. § 216(b). The rule specifically provides that "[t]he

court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs allow a

reasonable attorney's fee to be paid by the Defendant, and cost of the action." *Id.*

    4.02    Attorneys Russ and McLaughlin's expenses in the amount of $1,646.61 are

attached to this Affidavit in Support of Plaintiff's Motion for Attorneys' Fees and Costs as part of

Plaintiff's Exhibit 1. These expenses were reasonable and necessary in the successful prosecution

of this case. *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School

Board,* 919 F.2d 374 (5th Cir. 1990); *Mennor v. Fort Hood National Bank,* 829 F.2d 553, 557,

n.22 (5th Cir. 1987); *Blanchard v. Bergeron,* 831 F.2d 563, 564 (5th Cir. 1987); *rev'd on other

issues,* 489 U.S. 87 (1989); *Alberti v. Sheriff of Harris County,* 688 F. Supp. 1176, 1202 (S.D.

Tex. 1987); *Loewen v. Turnipseed,* 505 F. Supp. 12 (N.E. Miss. 1980); *Henry v. First National

Bank of Clarksdale,* 603 F. Supp. 658-668 (N.D. Miss. 1984) all stand for the proposition that

prevailing Plaintiffs are entitled to photocopying, long distance telephone calls, travel, air freight

and similar basically overhead-type expenses as part of a recoverable "attorney fee." Indeed, in

*Blanchard* the lower court was reversed for refusing to allow same.

11.  Fee Awards in Similar Cases

Plaintiffs move the Court to award a fee that is consistent with fees awarded to prevailing

parties in other similar cases.

### Paralegal Fees

Plaintiffs' counsel seek recovery of paralegal fees at the rate of $45.00 per hour, see

attachment (App. 59).

### Legal Standards Regarding Awards of Costs

Rule 54(d) of the Federal Rules of Civil Procedure provides for an award of costs "to the

prevailing party unless the court otherwise directs." FED. R. CIV. PRO. 54(d).

> 28 U.S.C. § 1920 defines recoverable costs, and a district court may decline to
> award the costs listed in the statute but may not award costs omitted from the list.
> *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442, 107 S.Ct. 2494,
> 2498, 96 L.Ed.2d 385 (1987). "Only when a clear abuse of discretion is shown
> can an award of costs be overturned." *In re Nissan Anti-Trust Litigation*, 577
> F.2d 910, 918 (5th Cir. 1978)

*Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 891 (5th Cir. 1993).

The following relevant costs are permissible pursuant to 28 U.S.C. § 1920: (1) fees of the

clerks and marshals; (2) fees of the court reporter for stenographic transcripts necessarily obtained

for use in the trial; (3) fees and disbursements for printing and witnesses; (4) fees for

exemplification and copies of papers necessarily obtained for use in a case. 28 U.S.C.A. § 1920

(West 1994).

Costs for deposition transcripts and for copies of pleadings and other papers are attached as Exhibit "J" (App. 60-62).

Receipts for travel expenses have been furnished as required by 28 U.S.C. § 1821(c)(1), and travel expenses are taxed at $56.66. Likewise, because Plaintiffs have provided documentation in support of a mileage allowance, subsistence expenses or mailing fees, the Court cannot determine if these costs are reasonable and necessary. Accordingly, costs for filing fees, service of process, mileage allowance, subsistence expenses and mailing fees will be allowed at $1,646.61.

Plaintiffs further move the Court to allow recovery of the $350.00 filing fee.

### Adjustment Upward of Fees
### Due to State Bar Referral

Danny Sellers came to the undersigned counsel with his cause of action and engaged the services of counsel , Exhibit "L" (App. 68-70). Sometime after counsel was retained the State Bar Referral Service advised the undersigned that it had referred Danny Sellers to the offices of Philip R. Russ. As such, counsel is obligated to forward ten (10%) percent of any net fee received the Lawyer's Referral Information Service (LRIS). Accordingly, Plaintiffs through their counsel request an upward adjustment of their fees to accommodate the State Bar Referral Service obligation, see LRIS, State Bar of Texas form confirming this requirement (App. 78).

### CONCLUSION

Plaintiffs move the Court to find that reasonable and necessary attorneys' fees in this case are a total of at least $63,635.00, which is $275.00 per hour times 231.4 hours for attorney time,

plus paralegal time at $45.00 per hour times 18.9 hours or $850.50 for a total of at least

$64,485.00 in fees.

Plaintiffs may further recover costs from the Defendants in this action in the total amount

of $1,646.61 (App. 60-62).

Plaintiffs request an upward modification to their fees by a requested award of

$100,000.00 as fees plus costs.

Respectfully submitted,

LAW OFFICES OF JERRY D. MCLAUGHLIN
600 S. Tyler, Suite 1302
Amarillo, Texas 79101
806-371-9110 - Telephone
806-373-9029 - Facsimile
          and
LAW OFFICES OF PHILIP R. RUSS
2700 S. Western, Suite 1200
Amarillo, Texas 79109
(806) 358-9293 - Telephone
(806) 358-9296 - Facsimile

Philip R. Russ Bar No. 17406000

## CERTIFICATE OF SERVICE

I hereby certify that on the _25th_ day of November, 2008, I electronically filed the foregoing "Application and Memo Brief for Judgment and for Attorneys Fees" with the Clerk of the Court for the Northern District of Texas, by using the CM/ECF system which will send a notice of electronic filing to the following CM/ECF participants,

Adair M. Buckner, Esq.
BUCKNER & CROSS, P.C.
600 S. Tyler, Suite 1313
Amarillo, Texas 79101
*Counsel for Defendants*

Philip R. Russ